**Donald Eugene JOHNSON, #29697, Petitioner,**

**v.**

**John E. BENNETT, Warden, Respondent.**

**Civ. No. 2–438–E.**

United States District Court
S. D. Iowa, E. D.

Oct. 16, 1968.

Donald Eugene Johnson, pro se.

Richard C. Turner, Atty. Gen., of Iowa, James C. Sell, Asst. Atty. Gen., for respondent.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

This matter is now before the Court on the petition of Donald Eugene Johnson for a writ of habeas corpus.

Petitioner was indicted and tried by a jury for the crime of uttering and drawing a false check in violation of Section 713.3, Code of Iowa (1962). On October 20, 1966, the jury returned a verdict finding petitioner guilty as charged, and petitioner was subsequently sentenced to the Iowa State Penitentiary for a period not to exceed seven years. This judgment of conviction was affirmed on appeal to the Iowa Supreme Court. State v. Johnson, 155 N.W.2d 512 (Iowa 1968). Petitioner then filed a petition for writ of habeas corpus in this Court which was denied for failure to exhaust state remedies. He then filed a petition for writ of habeas corpus in the Lee County Iowa District Court on March 1, 1968, which petition was denied on the same date without hearing and without benefit of counsel. This denial was not appealed and petitioner filed the petition now under consideration on April 3, 1968.

In the petition now before this Court petitioner initially made five basic contentions, which briefly stated, are as follows:

1. The trial court erred in overruling petitioner's motion to suppress his signature on a fingerprint card which was obtained without warning petitioner of his rights.

2. The finding of the trial court that the privilege against self-incrimination did not extend to said signature denied petitioner procedural fairness and due process.

3. The trial court erred in overruling certain objections to questions propounded to petitioner on cross examination.

4. Petitioner was denied the right of confrontation of a witness against him.

5. Appointed counsel was inadequate and ineffective.

The first three contentions were raised by petitioner in his appeal to the Iowa Supreme Court and were decided against him by that Court. State v. Johnson, supra. The last two contentions were first raised in the petition for writ of habeas corpus filed in the Lee County Iowa District Court. Only the fifth contention was given consideration in the opinion rendered by that Court in denying said petition. The Lee County District Court ruling was not appealed, and the Iowa Supreme Court has not had an opportunity to consider these last two contentions.

By order dated June 28, 1968, this Court took the view that petitioner had not exhausted his available state remedies as to these grounds and ordered the petition herein held in abeyance until such time as petitioner had an opportunity to exhaust his state remedies, in order to avoid piecemeal consideration of the grounds for relief. Instead of attempting to secure state court action, petitioner filed a motion to dismiss these two contentions. By order dated August 15, 1968, this Court granted petitioner 20 days in which to file a brief statement setting forth the reasons why he desired dismissal of these contentions. The Court also noted that dismissal of these contentions would cause the petition to set forth only matters of law for decision on record facts, and that consequently no evidentiary hearing, as requested by petitioner, would be required.

On August 23, 1968, petitioner filed the requested statement. Therein petitioner stated:

"Petitioner requested dismissal of Counts 4 and 5 of pending petition for writ of habeas corpus on the advice of an attorney at law. Petitioner, not being an attorney himself, assumes that Grounds 4 and 5 are without merit."

On the same date, petitioner filed a motion for leave to file a supplemental brief. Petitioner's motions to dismiss counts 4 and 5 of his petition for writ of habeas corpus and to file a supplemental brief will be granted, and the brief attached thereto will be treated as filed.

On August 31, 1966, petitioner was "processed" through the Identification Bureau of the Des Moines Police Department, Des Moines, Iowa, in connection with the criminal charges then pending. This processing included fingerprinting of the accused. After he was fingerprinted, the petitioner was asked to sign the fingerprint cards, which he did, apparently without objection. It is clear from the record that the officer who took the fingerprints and obtained petitioner's signature on the fingerprint card did not inform him that he had a right not to sign the card, that the signature could be used as evidence against him at trial, or that he was entitled to a lawyer before signing. Petitioner alleges that he was thereby deprived of his privilege against self-incrimination, and that the failure of the trial court to suppress the evidence obtained thereby denied him due process of law.

■ It is clear that the Fifth Amendment privilege against self-incrimination, as made applicable to state proceedings through the Fourteenth Amendment due process clause, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L. Ed.2d 653 (1964), protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature. Schmerber v.

State of California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Thus an accused may be required, consistent with the privilege, to model articles of clothing, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), to submit to a blood test to obtain evidence of the presence of alcohol, Schmerber v. State of California, supra, or to submit to routine fingerprinting or other determinations of physical characteristics, Napolitano v. United States, 340 F.2d 313 (1st Cir. 1965). There has long been a serious debate in the courts and among the scholars as to whether handwriting exemplars are included within the scope of the privilege. See, e. g., People v. Graves, 64 Cal.2d 208, 49 Cal.Rptr. 386, 411 P.2d 114 (1966); 8 Wigmore, Evidence § 2265 (McNaughton rev. 1961); Weintraub, Voice Identification, Writing Exemplars and Privilege Against Self-Incrimination, 10 Vand.L.Rev. 485 (1957). This debate has now been decided, if not stilled, by the holding of the Supreme Court in Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), that the taking of handwriting exemplars does not violate the privilege. Id. at 266, 87 S.Ct. 1951.

■ It is clear that an accused may not be compelled to produce writings for their incriminating content. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885). This amounts to requiring the accused to produce testimonial or communicative evidence for the purpose of incriminating himself. Handwriting exemplars, however, do not serve a communicative purpose. Their sole purpose as evidence is to serve to identify other writings with which they are to be compared.

■ It then follows that since the holding of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is grounded on the self-incrimination privilege, and since the purpose of the so-called *Miranda* warnings is to assure the protection of the privilege, such warnings need not be given before handwriting exemplars are ob-

tained. *Miranda*[c] is directed toward questioning of an accused with a view toward eliciting incriminating statements. The warnings are required to be given only when such interrogation is begun. Petitioner's privilege against self-incrimination was not violated either by the taking of the handwriting exemplar nor by not being advised of his constitutional rights prior to the taking of the exemplar.

The holdings of Gilbert v. State of California, supra, and of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), relating to the presence of counsel at police lineups, are not contrary to this holding. The holdings in these cases are designed not to protect an accused from self-incrimination, but to assure that a true identification of the prisoner is accomplished in an atmosphere of fairness. These holdings are grounded in the Sixth Amendment right to counsel, and are designed to protect against the "grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial," United States v. Wade, supra, at 236, 87 S.Ct. at 1937. As stated in *Gilbert*, "There is minimal risk that the absence of counsel might derogate from his right to a fair trial. * * * If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts." Gilbert v. State of California, supra, 388 U.S. at 267, 87 S.Ct. at 1953.

Petitioner's third contention concerns the proper scope of cross-examination. Section 781.13, Code of Iowa (1966), provides:

When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief.

Petitioner claims that this statute was violated by the trial court, thus depriving him of due process of law, in allowing the state to inquire into matters not the subject of the examination in chief.

After giving his name, petitioner was asked the following questions on direct examination:

"Q. Were you, on the 22nd day of July, 1966, in possession of a driver's license? A. No, sir.

"Q. What is your normal procedure in writing your name relative to the letter 'S' in Johnson? A. This one here, the small capital letter 'S'.

"Q. You don't make this kind of an 'S'? A. No, sir."

On cross-examination he was asked:

"Q. Mr. Johnson, I call your attention to State's Exhibit E. Do you always make your 'S' that way? A. Yes, sir.

"Q. Have you always—A. Well, I couldn't really—

"Q. Have you always in the past make it that way? A. I don't know. It's like in grade school, you know, you have like Greg (sic) shorthand, that's the type I come under. I guess you get personal writing traits or something. I couldn't say I have always done it that way.

"Q. Did you ever make it like that one (indicating)? A. Whether I have or haven't, I don't know. I suppose I have made one that way, yes, sir.

"Q. I want you to take a look at State's Exhibit A. Have you ever seen that before? A. I can't say that I have.

"Q. Isn't it a fact that you wrote that check, Mr. Johnson?" Over objection that it was not proper cross-examination, he answered "yes, sir."

▪ The Iowa Supreme Court has held that there was no error in this cross-examination. State v. Johnson, supra. This Court finds no constitutional error. The witness had testified that he did

not sign his name in the manner in which the check was signed. It was proper cross-examination to ask if he signed the check in order to impeach this testimony.

Later in the cross-examination, the petitioner was asked:

"Q. Did you pass that check at Dahl's on the 22nd of July, 1966? A. No, sir.

"Q. Well, what did you do with it after you wrote the check?"

The trial court overruled an objection to this question as being improper cross-examination, and the witness testified that he left the check in a hotel room in the Randolph Hotel. Again the question is well within the scope of permissible cross-examination under the Iowa statute, and the Iowa Supreme Court held that there was no error in overruling the objection. State v. Johnson, supra.

■■ The interpretation placed upon a state statute by the highest court of the State is binding on the federal courts. The only question remaining, then, is whether the interpretation of section 781.13 as made by the State Court is so violative of "That fundamental fairness essential to the very concept of justice," Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941), as to be a deprivation of due process. This Court does not believe that it is. Fundamental fairness does not require that an accused, who chooses to testify to matters favorable to himself, be insulated from cross-examination on other matters connected with the alleged crime. Petitioner's claims are without merit.

It is ordered that petitioner's motion to dismiss Counts 4 and 5 of his petition for writ of habeas corpus be and is hereby granted.

It is further ordered that petitioner's motion to file a supplemental brief herein be and is hereby granted.

It is further ordered that the supplemental brief attached to petitioner's motion be filed herein.

It is further ordered that the petition of Donald Eugene Johnson for writ of habeas corpus be and the same is hereby denied.