**STATE of Iowa, Appellee,**

v.

**Purl John RAUHAUSER, Appellant.**

**No. 61577.**

Supreme Court of Iowa.

Dec. 20, 1978.

1977. Following the entry of his plea of not guilty, he was tried to a jury, convicted, sentenced and now appeals. We affirm.

On August 13, 1977, the defendant Rauhauser placed a telephone call from a Fort Dodge tavern to the city police department and requested he be furnished a ride home. Two officers went to the tavern, conversed with Rauhauser, suggested that he call a cab, and then left the tavern. Rauhauser followed the officers outside. They later testified that his speech was slurred and he could not walk straight. He was then placed under arrest for public intoxication. He was taken to the police station where a videotape was made, demonstrative of his condition. Rauhauser was at no time advised of his constitutional rights; that is to say, he was not given what we have come to refer to as the "*Miranda* warnings".

Prior to trial Rauhauser filed a motion to suppress evidence of his conversation with the officers at the police department, asserting that the process of engaging the defendant in conversation while on videotape constituted illegal questioning in violation of his constitutional rights in that he had not been warned of his rights. Defendant also filed a motion in limine to require the State's witnesses to refrain from commenting upon or testifying to any alleged statements of defendant while in custody at the police station. The prosecutor conceded that the allegations set out in defendant's motion to suppress were correct, and agreed to refrain from introducing the videotape of Rauhauser into evidence.

Rauhauser further moved prior to trial under § 801.5(2)(b)(1) and (2), Supplement to the Code, 1977, that the procedural and sentencing provisions of the new Iowa Criminal Code be applied to his trial. He further moved to dismiss the charge on the grounds that the new Criminal Code had implicitly repealed the crime of public intoxication by omitting the crime from the recodification.

At trial, the arresting officers testified the defendant's speech at the time of his arrest and at the police station was slurred

Thomas J. Bice and James L. Kramer of Johnson, Burnquist, Erb, Latham & Gibb, P. C., of Fort Dodge, for appellant.

Richard C. Turner, Atty. Gen., Ann Fitzgibbons, Asst. Atty. Gen., and William Thatcher, Webster County Atty., for appellee.

Considered by REES, P. J., and UHLENHOPP, HARRIS, McGIVERIN and LARSON, JJ.

REES, Justice.

The defendant, Purl John Rauhauser, was charged by county attorney's information with the crime of public intoxication, second offense, in violation of § 123.46, The Code,

and jerky. Officer Fortney further testified as to the defendant's physical condition as he observed it at the police station, including the manner of defendant's speech. Rauhauser objected to Fortney's testimony concerning his manner of speech, contending that because the videotape was inadmissible it necessarily followed that testimony of his actions and conduct as they appeared on the videotape should not be permitted. The trial court overruled defendant's objections and permitted Fortney and other officers to testify.

Following the rendition of a verdict of guilty, the defendant was sentenced to a term of six months imprisonment in the Webster County jail, and then filed a timely appeal to this court.

The defendant states the following issues for review:

(1) Was the crime of public intoxication, second offense, as proscribed by §§ 123.46 and 123.91, The Code, 1977, implicitly repealed by the enactment of the new Iowa Criminal Code?

(2) Did the trial court err in admitting into evidence testimony concerning the manner of defendant's post-arrest speech when the defendant had not been given the *Miranda* warnings?

I. Defendant's contention that the crime of public intoxication, second offense, has been repealed by implication is based on two separate arguments. First, the defendant notes that the offense with which he is charged is not defined or referred to in the 1977 Supplement to the Code, commonly referred to as the new Criminal Code. Secondly, he alleges the sentencing provisions of § 123.91, The Code, 1977, are irreconcilable with the sentences established in the 1977 Supplement to the Code.

Although the defendant was charged with the offense prior to the effective date of the Criminal Code, to-wit: January 1, 1978, § 801.5(2)(a) of the 1977 Supplement does permit a partial application of the Criminal Code to the case at bar:

"In any case pending on or commenced after the effective date of this Act, involving an offense committed before that date:

"a. Upon the request of the defendant a defense or mitigation under this Act, whether specifically provided for herein or based upon the failure of the Act to define an applicable offense, shall apply; . . . . ."

We must therefore determine whether the omission of § 123.46, defining "public intoxication", and § 123.91, providing the sentence for the second offense of public intoxication, from the new code constitute an implicit repeal of said sections, and provide a "defense" under § 801.5(2)(a).

▌Before reaching the merits of defendant's contentions, the law concerning repeal by implication must be considered. There is a presumption against repeal of statutes by implication. Such repeals are not favored by the courts and will not be sustained unless legislative intent to repeal is clear in the language used and such a holding is absolutely necessary. *Dan Dugan Transport Co. v. Worth County*, 243 N.W.2d 655 (Iowa); *Peters v. Iowa Employment Security Commission*, 235 N.W.2d 306 (Iowa). To constitute an implicit repeal, the new statute must cover the same subject matter as the old statute and the provisions of the statutes must be irreconcilably repugnant. *Dan Dugan Transport Co., supra; Taschner v. Iowa Electric Light and Power Company*, 249 Iowa 673, 86 N.W.2d 915. If at all possible, the statutes will be construed in such a manner as to be consistent with each other. *Taschner v. Iowa Electric, supra; Board of Trustees of Farmers' Drainage District v. Iowa Natural Resources Council*, 247 Iowa 1244, 78 N.W.2d 798. The legislature is presumed to know the existing state of the law at the time of the enactment of a new statute. *Jahnke v. Incorporated City of Des Moines*, 191 N.W.2d 780 (Iowa). Similar canons of construction have been adopted at the federal level. See *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320; *Abell v. United States*, 518 F.2d 1369, 207 Ct.Cl. 207.

Defendant contends the failure of the legislature to include the crime of public intoxication, second offense, within the revised Criminal Code, results in the implicit repeal of statutes defining said offense. This argument is not without support. In the Laws of the Sixty-Sixth General Assembly, 1976 Session, Chapter 1245, the Iowa Criminal Code is prefaced "An Act relating to a complete revision of the substantive criminal laws, criminal procedure laws, and sentencing and post-conviction procedure laws of this state; . . . ." We can thus discern a legislative intent to compile a complete statement of the criminal laws of this state. Further, if the Criminal Code does constitute a full restatement of Iowa's criminal laws, then there is a clear repugnance between the law preceding enactment of the Criminal Code and the provisions of the Criminal Code as to the crime of public intoxication, second offense.

In the alternative, the State contends the omission of public intoxication, second offense, from the Criminal Code does not require a finding of implicit repeal due to the lack of clear legislative intent. For the following reasons, we find the argument of the State to be compelling.

 While the prefacing statement to the Act noted above does support the defendant's position, there are other indications which cause the intent of the legislature to be at best unclear. In regard to implicit repeals in the codification context, we find in Sutherland on Statutory Construction (1972 ed.) Vol. 1A § 23.14, the following:

"* * * Where a code does not provide complete coverage of a subject matter, omission of an act from the code will not be construed as a repeal of that act."

"By its very nature a codification usually consists of a mere reiteration of the existing laws and is usually intended to state them in a more concise and related form. Therefore a code is generally presumed to have no altering or repealing effect upon the existing law, unless the intent is clearly expressed."

As we noted in *Dan Dugan Transport, supra*, at 657, the non-repeal presumption is "simply an aid to ascertaining legislative intent and is never invoked to defeat it." In revising the criminal laws of this state, the legislature made several substantive changes and, as a result, included within the Act as passed a rather exhaustive listing of statutes repealed by the new Criminal Code. See § 525 of chapter 1245, Laws of the Sixty-Sixth G.A., 1976 Session. Nowhere are §§ 123.46 and 123.91 referred to. Had the legislature intended to repeal said statutes, it is only reasonable to expect an indication of such intent where other repealed statutes are enumerated. The new Criminal Code, whether intentionally or not, does not provide a complete coverage of the subject matter, resulting in an ambiguity regarding legislative intent. Absent a clear showing of legislative intent, a finding of implied repeal by us would constitute a usurpation of legislative authority. In light of the fact that a finding of implied repeal requires a clear legislative intent, the defendant has not met the requisite burden and the conclusions of the trial court must be sustained. See *Powell v. Utz*, 87 F.Supp. 811, 816 (E.D.Wash.); *United States v. Klock*, 100 F.Supp. 230, 233 (N.D.N.Y.).

A similar conclusion must be reached concerning defendant's argument as to the sentencing provisions of the new Criminal Code. The permissible sentence under § 123.91, The Code, is somewhat inconsistent with the sentencing categories established by the new code. Any argument in favor of implied repeal runs counter to the aforementioned problems regarding the requisite legislative intent due to the fact that § 123.91 was neither repealed nor amended to conform to the new Criminal Code. Secondly, the provisions of § 123.91 and the new code are not irreconcilably repugnant and are capable of being harmonized.

 Section 123.91 provides, in relevant part, that a person who is convicted of a second offense of public intoxication shall be punished "by a fine of not less than five hundred dollars nor more than one thou-

sand dollars, and by imprisonment in the county jail or the state penitentiary for not less than six months nor more than one year". Nowhere is the offense specifically declared to be a felony. Section 701.7 of the new Criminal Code provides, "A public offense is a felony of a particular class when the statute defining the crime declares it to be a felony. . . ." Section 687.4 of the new Criminal Code provides that every other public offense shall be a misdemeanor. Thus defendant contends that the sentencing provision of § 123.91 is repealed due to the fact that the offense is not specifically labeled a felony.

Before finding an implied repeal, we are compelled to harmonize the statutes if at all possible. *Taschner, supra.* Legislative intent that public intoxication, second offense, be categorized as a felony is found through an examination of the definition of "felony" in § 687.2, The Code:

"A felony is a public offense which is, or in the discretion of the court may be punished by imprisonment in the penitentiary or men's reformatory or the woman's reformatory."

The classification of a crime as a felony or a misdemeanor being derivative of the type of punishment to which one may be subjected. § 123.91 and the classifactory scheme of the new Criminal Code can be harmonized through the definition of felony in § 687.2. In making public intoxication, second offense, punishable by imprisonment in the penitentiary, the legislature was consistent with the § 687.2 definition of felony. It requires only a definitional equivocation to find § 123.91 consistent with § 701.7 of the new Criminal Code. In allowing punishment by a penitentiary term, "the statute defining the crime declares it to be a felony". We must conclude that the sentencing provision of § 123.91 for both of the grounds noted above, were not implicitly repealed by the new Criminal Code. Not only does the necessary clear legislative intent remain unestablished, but the statutes are not irreconcilably repugnant.

■ II. Over objection, the trial court permitted the arresting officers and the officer on duty at the police station to testify as to the manner in which the defendant spoke after his arrest, despite the fact that no *Miranda* warnings were given. The issue before us is whether the defendant's manner of speech is to be characterized as testimonial or communicative, and thus subject to exclusion due to the lack of *Miranda* warnings, or as physical evidence, and thus outside the scope of defendant's Fifth Amendment right against self incrimination, made applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. We conclude that the trial court did not err in admitting the testimony of the officers concerning defendant's manner of speech in that defendant's manner of speech constituted physical evidence. It must be noted that the officers were not permitted to testify to the *content* of defendant's speech only his manner of delivery.

■ The Fifth Amendment privilege against self incrimination extends only to evidence of a testimonial nature. It does not protect an accused from the compulsory display of measurable or identifiable physical characteristics. Thus, an individual can be forced to exhibit his body (*Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149); to furnish blood specimens (*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908); to furnish handwriting exemplars (*Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178); or voice exemplars (*United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67).

We have addressed a similar issue in *State v. Heisdorffer*, 164 N.W.2d 173 (Iowa) where the admissibility of testimony descriptive of responses to a field sobriety test was challenged. In *Heisdorffer*, at page 175 of 164 N.W.2d, we said:

"Second, the performance of such tests does not amount to 'evidence by communication in whatever form that communication may take'. *State v. Sefcheck*, Iowa, 157 N.W.2d 128, 135. The observa-

tion of defendant during the tests makes his actions real or physical evidence against himself, rather than testimonial evidence. Such tests are more nearly akin to the taking of blood samples, fingerprints or handwriting exemplars. Requiring defendant to furnish such evidence does not violate his privilege against self incrimination. (Citing *U. S. v. Wade* and *Gilbert v. California*)."

The fact that the defendant here had not been informed of his *Miranda* rights subsequent to arrest does not affect the admissibility of the testimony for it was not gained in violation of Rauhauser's privilege against self incrimination. As we said in *Heisdorffer* at page 176:

"The observations of the defendant's movements constitute real evidence rather than communicative evidence and did not call for application of the *Miranda* warnings."

See also *Johnson v. Bennett*, 291 F.Supp. 421 (S.D.Iowa) at 423–424.

The trial court permitted the reception of testimony regarding the manner of Rauhauser's speech, not of its content. So long as the testimony was restricted to the physical characteristics of the defendant's speech, we are unable to effectively distinguish it from compelled voice or handwriting exemplars. The defendant argues that the testimony did not relate to identification, and that *Schmerber* and *Dionisio* could, therefore, be distinguished. This argument fails to note that the underlying denominator which prevents physical evidence from running afoul of the privilege against self incrimination is that such evidence relates only to the physical characteristics of the defendant. An effective identification can be as incriminating as testimony relating to sobriety. The essential consideration is the source or nature of the evidence.

An analogous situation to that at bar concerns the use of voice exemplars. In this regard the Maryland Court of Special Appeals, in *Reed v. State*, 35 Md.App. 472, 372 A.2d 243, 256, said:

"Wade refutes the contention that the compelled production of voice exemplars violates the Fifth Amendment. The exemplars of appellant's voice were to be used solely to measure the physical properties of his voice, and not for the testimonial or communicative content of what was said."

We therefore find no merit in defendant's attempt to distinguish and find the case of *People v. McLaren*, 55 Misc.2d 676, 285 N.Y. S.2d 991, as against the weight of authority established in the Supreme Court cases noted earlier. See also *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375.

The defendant further argues that since the prosecutor stipulated to the inadmissibility of the videotape, which was taken of the defendant at the police station after his arrest, on *Miranda* grounds, the prosecution should not have been permitted to elicit testimony descriptive of defendant's conduct during the making of the tape. We cannot speculate regarding the prosecutor's motive for so stipulating. We note that the stipulation could have been based on the possible inability to keep the content of defendant's speech from the jury, either through the audio portion of the videotape or possible lip-reading by the jurors. The testimony admitted was not violative of defendant's Fifth Amendment right against self incrimination, and the trial court's overruling of defendant's objection must, therefore, be sustained.

To summarize, we hold that §§ 123.46 and 123.91, The Code, were not repealed by implication by the provisions of the new Criminal Code, 1977 Code Supp., and that testimony describing defendant's manner of speech was not rendered inadmissible by the failure of the arresting officers to give *Miranda* warnings. The judgment of the trial court must be, and is, affirmed.

AFFIRMED.