# IN THE COURT OF APPEALS OF IOWA

No. 21-0776
Filed July 20, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DAVID LEE OLTROGGE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

David Lee Oltrogge challenges the denial of his application to modify sexual offender registration requirements. **WRIT SUSTAINED AND REMANDED WITH INSTRUCTIONS.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

In 1991, when David Lee Oltrogge was nineteen years old, he committed a violent sexual assault. He was convicted of second-degree sexual abuse and sentenced to an indeterminate prison term not to exceed twenty-five years. After Oltrogge was released from prison in 2000, he had to register as a sex offender for life. In 2020, Oltrogge applied to modify the registry requirement under Iowa Code section 692A.128 (2020). Following a hearing, the district court denied Oltrogge's application, citing his "relocation to another state, the purpose of the sex offender registration and notification systems, and the lack of evidence presented to corroborate [Oltrogge's] own reports that he has maintained good behavior and stability in the community." Oltrogge appeals.[1]

## I.    *Background Facts and Proceedings*

The details of Oltrogge's sexual assault of a woman that he and another man forced into a car and drove to a remote location are, in the words of Oltrogge's attorney, "terrible." The State focused on those terrible facts in resisting Oltrogge's application to modify the requirement that he register as a sex offender under section 692A.128. Oltrogge, on the other hand, highlighted what he had done

---

[1] Though the State has not challenged whether Oltrogge invoked our jurisdiction by filing a notice of appeal, "we have a responsibility to police our jurisdiction." *State v. Todd*, No. 19-2001, 2021 WL 3075756, at *3 (Iowa Ct. App. July 21, 2021). We have found that appellate review of the denial of an application to modify sex-offender-registry requirements should not be initiated as a direct appeal but as a petition for writ of certiorari under Iowa Rule of Appellate Procedure 6.107(1)(a). *See id.*; *accord State v. Larvick*, No. 20-1273, 2022 WL 610361, at *1–2 (Iowa Ct. App. Mar. 2, 2022). "[I]f a case is initiated by a notice of appeal, but another form of review is proper, we may choose to proceed as though the proper form of review was requested by the defendant rather than dismiss the action." *State v. Propps*, 897 N.W.2d 91, 97 (Iowa 2017) (citing Iowa R. App. P. 6.108). We choose to proceed as though Oltrogge petitioned for writ of certiorari, which we grant.

since the offense in seeking to be removed from the registry. In an affidavit submitted as an exhibit at the hearing on his application, Oltrogge stated that he completed sex offender treatment twice—once in prison and again while on parole, with "continued aftercare at [his] own expense." He has been on the registry for twenty years with no violations. In 2004, Oltrogge completed a course to become a commercial diver. Because most of his work takes place in the Gulf of Mexico on off-shore oil rigs, Oltrogge moved to Texas around 2012. He lives there with his wife of ten years and two children.

Attached to Oltrogge's application, and submitted as an exhibit at the hearing, was a validated risk assessment approved by the department of corrections. The assessment used the STATIC-99R and STABLE 2007 tests to measure Oltrogge's risk to reoffend.[2] On the STATIC-99R test, which assesses risk at the time of release from prison, Oltrogge scored a 5, placing him in the "above average risk" to reoffend category. But because Oltrogge was "sex offense free since the date of release from prison (4/27/2000) a period of 20 years," his STATIC-99R risk profile was consistent with the "very low risk" category. The assessment explained: "The longer an offender has been free of detected sexual offending since his release to the community from their index sex offence, the lower their risk of recidivism." On the STABLE 2007 test, which is used "to develop a comprehensive risk management profile of the offender," Oltrogge scored a 3, reflecting "a risk level consistent with the lowest risk to reoffend." The combined scores of the two tests accordingly classified Oltrogge as low risk.

---

[2] The ISORA, a third risk assessment tool usually required by department policy, was not used because of how long Oltrogge had been out of prison.

Oltrogge, who participated in the hearing by video, did not testify in support of his application. Instead, he relied on the risk assessment, studies about the tests used to perform the assessment, and his affidavit, all of which came into evidence without objection from the State.[3] Like Oltrogge, the State relied on exhibits in resisting Oltrogge's application. Those exhibits included the minutes of testimony from the criminal case with photos of the victim after the sexual assault, along with the victim's deposition and trial testimony.

After taking the matter under advisement, the district court issued its ruling denying Oltrogge's application. The court was especially concerned by Oltrogge's move to Texas, finding as it related to the "public notification purpose" of the registry that

> [m]embers of the community or communities where [Oltrogge] is currently living and working are much less likely to have knowledge of the violent crime that [Oltrogge] committed in Black Hawk County, Iowa, from publicity or other sources than members of the community here. Members of the community or communities where [Oltrogge] is currently living and working are much less likely to have free, easier access to information about the crime and its surrounding circumstances. Without such knowledge, notification, and access to information, [Oltrogge]'s neighbors and fellow community members cannot take whatever measures they deem appropriate to reduce their own risk and protect themselves or others. When [Oltrogge]'s neighbors and fellow community members do not have such knowledge and access to information, [Oltrogge] has a greater chance of avoiding detection and apprehension if he reoffends, a scenario that does not discourage reoffending.

While acknowledging Oltrogge was classified as a "low risk to reoffend," the court found he "still presents a different, and greater, risk of violation and violence

---

[3] Oltrogge also pointed out in argument to the court that his co-defendant in the criminal case had filed a successful application in a different county to be removed from the registry. A copy of that district court ruling was attached to his pre-hearing brief.

to the public than someone who has never done to another what [Oltrogge] did to [the victim]—and never would." The court noted that Oltrogge did not "express any overt remorse" about his offense and "did not show that he has not been convicted of another crime and has maintained good behavior since his discharge from supervision and since his relocation from Iowa." Finally, the court discounted "information in the record about dynamic treatment variables" used in the STABLE 2007 test about "[Oltrogge's] history of employment, behavior in the community, family circumstances, etc. since his discharge from supervision" because it was "largely self-reported."

Oltrogge moved to enlarge, amend, or reconsider, pointing out several purported flaws in the court's decision. Before the court ruled on the motion, Oltrogge filed a notice of additional authorities to alert the court to two newly decided Iowa Supreme Court cases discussing modification of sex offender registration requirements: *Fortune v. State*, 957 N.W.2d 696 (Iowa 2021), and *Becher v. State*, 957 N.W.2d 710 (Iowa 2021). The district court summarily denied the motion after stating it had reviewed the authorities provided by Oltrogge.

Oltrogge appeals. He claims the court abused its discretion in denying his application because the court considered improper or irrelevant factors, as well as factors that were not supported by the record.[4]

---

[4] Oltrogge initially asserts that we "could just remand for consideration of proper standards of discretion." We have done that in other cases in which the district court did not have the benefit of the supreme court's decisions in *Fortune* and *Becher*. *See, e.g.*, *State v. Buck*, 2022 WL 951067, at *2–3 (Iowa Ct. App. Mar. 30, 2022). But here, the court did have the benefit of those decisions through Oltrogge's post-hearing motion and notice of additional authorities. We thus agree with the State that a remand for consideration of *Fortune* and *Becher* is unnecessary.

## II.    Analysis

In its recent discussion about modifying sex-offender-registry requirements under section 692A.128, the supreme court observed:

> While the purpose of protecting the public supports the registration statute in general, the purpose of the modification provision is to permit some offenders, who are eligible, to obtain relief from the burdensome registration provisions.[5]  As we have noted, the eligibility for modification after statutory standards are satisfied "balances the registry's protective purpose with our legislature's related recognition—in enacting the modification provision—of an individual's interest in removal from the registry when appropriate."

*Fortune*, 957 N.W.2d at 705 (citation omitted).  The statute thus sets out certain threshold requirements before modification is possible.  *See* Iowa Code § 692A.128(2)(a)–(e).  "Once the initial threshold is met, the district court may grant modification."  *Id.* at 703.  The court explained: "[T]he term 'may' ordinarily vests the trial court with discretion."  *Id.*

Because the State concedes Oltrogge established those threshold requirements, our focus is on whether the district court abused its discretion in denying the application.  *See Fortune*, 957 N.W.2d at 703.  A court abuses its discretion if it "fails to consider a relevant factor, or considers an improper or irrelevant factor, on the question of whether the ongoing risks of danger from the sex offender justifies continuation of the registration requirements."  *Id.* at 707.

"In this second step, the district court should consider the statutory factors and any other factors that the district court finds relevant to the modification issue."

---

[5] The *Fortune* court explained, "The provisions of sex offender registration are onerous.  The direct and collateral consequences of sex offender registration include stigmatization, challenges in finding employment, restrictions on residency and movement, and difficulty in finding housing."  957 N.W.2d at 709.

*Id.* "[T]he district court should consider only those factors that bear on whether the applicant is at low risk to reoffend and there is no substantial benefit to public safety in extending the registration requirements." *Id.* at 706. "'[L]ow risk' does not mean *no risk*" and "[t]he threat to public safety must be tied to the individual applicant and the record established in each case." *Id.* "[T]he district court must take care to ensure that public safety, and not punishment, provides the lens through which facts are evaluated." *Id.* at 707.

So what are proper "other" factors for a court to consider? The *Becher* opinion stated that time in the community without re-offense is a positive factor. 957 N.W.2d at 717. And the *Fortune* opinion stated that marriage and participation "in normal family life" is also a positive factor. 957 N.W.2d at 708. Those positive factors are present here, as Oltrogge's attorney pointed out at the hearing:

> It's been [twenty] years and no sexual reoffending. He's not only low-risk, but very low-risk. He did treatment. He was [nineteen] years old at the time. That he's now [thirty] years older, [forty-nine] years old; married; been raising children; stab[le]; and employ[ed]. . . .

The district court discounted some of these factors in finding that "Defendant's history of employment, behavior in the community, family circumstances, etc. since his discharge from supervision by the Department of Correctional Services was largely self-reported by Defendant, without verification and corroboration from credible, reliable sources." But Oltrogge's affidavit relating that information was made under oath, admitted into evidence without objection from the State, and not rebutted by any other evidence in the record. *Cf. id.* at 709 (determining the district court's finding that applicant lacked remorse "did not have a factual basis in the record" where neither party asked him questions about the

topic during his testimony). The same information was also relayed by Oltrogge to the assessor who performed the STABLE 2007 evaluation, which led to that assessor's conclusion that he was at low risk to reoffend. We accordingly find the court abused its discretion in discounting this information. *Cf. Becher*, 957 N.W.2d at 716 (stating that while the "district court is not bound by an evaluation that determines that an offender . . . is at low risk to reoffend. . . . it is weighty evidence on the modification issue that should not be evaluated out of its proper context").

We find the district court's statement that Oltrogge "did not show that he has not been convicted of another crime and has maintained good behavior since his discharge from supervision and since his relocation from Iowa" is not supported by the record, as Oltrogge argues on appeal. *See Fortune*, 957 N.W.2d at 703 ("A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law."). The risk assessment stated: "Records indicate Mr. Oltrogge has been sex offense free since the date of release from prison (4/27/2000) a period of 20 years." In an email attached to Oltrogge's post-hearing motion, the author of the risk assessment clarified that "[n]ational arrest records (NCIC) were reviewed in the completion of the report for Mr. David Oltrogge. Those records indicate no further charges for sexual deviant behavior and no additional charges of any kind while residing in Texas." As stated above, Oltrogge's lack of criminal involvement is a positive factor that should have been considered by the court. *See Becher*, 957 N.W.2d at 717.

As for Oltrogge's "lack of remorse," to the extent that factor was relied on by the district court, we agree with Oltrogge that it was not fully supported by the record. The district court correctly observed that in the STABLE 2007 risk

assessment notes, the assessor observed that Oltrogge "didn't express any overt remorse about the offense." But in his affidavit, Oltrogge did express remorse:

> I have never forgotten what I did in the criminal case that required my registration, nor do I want to. That memory keeps me pushing to be the best that I can be. I cannot say I am sorry enough . . . for what I have done to both her and her family. I can prove I am sorry by never offending again and by showing my family and friends that I have changed.

The record also shows Oltrogge successfully completed sex offender treatment, "which generally requires that an offender confront his responsibility for past offenses." *Fortune*, 957 N.W.2d at 709. This case is thus unlike *State v. Seidell*, No. 21-0493, 2022 WL 951002, at *2 (Iowa Ct. App. Mar. 30, 2022), where we affirmed the denial of an application to modify the registry requirements when the applicant continued to deny his offense at the hearing on his application.

Oltrogge next challenges the district court's consideration of his move to Texas as a negative factor. We agree with Oltrogge that there was no apparent tie between his move and public safety. *See Fortune*, 957 N.W.2d at 706 ("The threat to public safety must be tied to the individual applicant and the record established in each case."). The court suggested that if Oltrogge was removed from the registry in Iowa, his "neighbors and fellow community members" would be left without "knowledge, notification, and access to information" about his crime, thus giving Oltrogge "a greater chance of avoiding detection and apprehension if he reoffends." But Oltrogge is at low risk to reoffend, which is "weighty evidence on the modification issue." *Becher*, 957 N.W.2d at 716. And, as Oltrogge's attorney pointed out, Texas has its own registry requirements so that even if

Oltrogge is removed from the registry in Iowa, "it will be up to Texas to decide whether that's good enough to take him off down there."

As in *Fortune*, the district court's consideration of the nature of the offense seems to have led the court to override the risk assessment tools, which is the same path the State seeks to lead us down on appeal.[6]  The court in *Fortune* explained: "We think the results of the risk assessment tools should not generally be overridden by nonvalidated risk assessments made by the district court based upon the nature of the crime and its apparent relationship to recidivism."  957 N.W.2 at 708.  This is because "consideration of the nature of the crime comes perilously close to punishment, an impermissible goal of the sex offender registration."  *Id.*  And "the nature of the crime has already been factored into the equation in two ways."  *Id.*  First, as a tier III offender, Oltrogge "must have at least five years in the community without reoffense to be eligible for modification compared to shorter periods of time for less serious offenses."  *Id.* (citing Iowa Code § 692A.128(2)(a)).  "Second, the nature of the crime is a factor considered in the validated assessment tools."  *Id.*

---

[6] The State argues the "district court's ruling permissibly invokes the qualitative difference between the terrible offense that Oltrogge perpetrated on [the victim] and a more minor sex offense."  According to the State, the "most important factor here is thus the nature of the crime because it informs the qualitative risk of recidivism."  In essence, the State argues the brutal nature of Oltrogge's crime precludes his removal from the registry.  But the statute allowing modification of the registry requirements does not except any sex offenses from its provisions. *See* Iowa Code § 692A.128.  We are bound to follow the statute and our supreme court's cases interpreting it.  *See In re Det. of Geltz*, 840 N.W.2d 273, 276 (Iowa 2013) ("Ours not to reason why, ours but to read, and apply.  It is our duty to accept the law as the legislative body enacts it." (citation omitted)).

This is not to say "that the underlying nature of the crime can never be considered by the district court." *Becher*, 957 N.W.2d at 717. "But care must be taken to ensure that registration is not punishment." *Id.* "District courts should [accordingly] be cautious in rejecting the validated risk assessments based on a case-by-case judicial impression of the underlying offense." *Fortune*, 957 N.W.2d at 708. To that end, the court in *Fortune* said that "similarity of patterns between past offenses and present behavior could be quite relevant." *Id.* at 709. Here, however, there is no indication in the record that Oltrogge is engaging in a pattern of behavior similar to the crime giving rise to the registry requirement. While his crime was terrible, our focus "must be on the *present* danger or threat to public safety, not on punitive response to past crime." *Id.* (emphasis added).

Because the district court considered irrelevant and improper factors, we find the court abused its discretion in denying Oltrogge's application to modify his sex-offender-registry requirements. This leads to the question of the appropriate remedy. A case can be made that we should remand for a new hearing to reassess the application without consideration of the improper factors and to order that hearing to be conducted by a different judge, much like we do when a sentencing judge considers an improper factor. *See, e.g.*, *State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014) (remanding for resentencing before a different judge when the original sentencing judge considered an impermissible sentencing factor). In some cases, that may be the appropriate remedy and we leave open that possibility in some future case. But in this case, we find a remand unnecessary because, without consideration of the irrelevant and improper factors, there are no other factors left in the record that would support denying modification. *See, e.g., State*

*v. Roby*, 897 N.W.2d 127, 148 (Iowa 2017) (finding the "evidence presented at the sentencing hearing could not, as a matter of law, support the imposition of incarceration without an opportunity for parole under the five factors that must be observed at sentencing" for a juvenile offender and remanding with instructions). We accordingly remand for an order granting Oltrogge's application.

**WRIT SUSTAINED AND REMANDED WITH INSTRUCTIONS.**